UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

THEODORE CARTER AND
REBECCA CARTER,

      Plaintiffs,

v.                              Civil Action No. 2:15-cv-13155

CENTRAL REGIONAL WEST VIRGINIA
AIRPORT AUTHORITY, TRIAD
ENGINEERING, INC., CAST & BAKER
CORPORATION, AND NATIONWIDE MUTUAL
FIRE INSURANCE COMPANY,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

      Pending are motions to remand filed by plaintiffs Theodore and Rebecca Carter and defendant Central Regional West Virginia Airport Authority ("the Authority"), both on October 14, 2015, and a supplemental motion to remand by the Carters filed June 15, 2016.

<u>Background</u>

      This case arises from the March 12, 2015 landslide at Yeager Airport in Charleston, West Virginia.  The Authority, a defendant in this case, is a political subdivision of West Virginia that owns and operates Yeager Airport.  Pl. Compl. ¶ 2. The Carters are residents of Charleston whose home was located on Keystone Drive near Yeager at the time of the landslide.

The court takes the following facts from the complaint. In the early 2000s, the Authority determined that Yeager would "become obsolete unless it extended its runway (Runway 5) or at least constructed a runway safety area ['RSA']." Pl. Compl. ¶ 9. The Authority hired Triad Engineering to perform consulting and engineering work on the project, and contracted with Cast & Baker for construction work. Pl. Compl. ¶¶ 11-12. These companies recommended that the RSA include an engineered material arresting system ("EMAS"), which is a "68,000-square-foot area of 4,200 foam and cement blocks, each between 7 and 21 inches thick," "designed to break down if an airplane overruns the runway." Pl. Compl. ¶¶ 10-12. Because Yeager is situated "at the top of a ridge" with limited additional space, the contractors built a "270-foot high slope" with an "asphalt bed" to make room for the EMAS blocks. Pl. Compl. ¶¶ 7-8, 12.

Thereafter, problems arose with the manmade slope supporting the EMAS. Cracks began to appear in the EMAS in mid-2013. Pl. Compl. ¶ 17. In late 2014 and early 2015, inspectors of the EMAS, as well as persons involved with a church near the airport, expressed serious concerns about the slope's stability. Pl. Compl. ¶¶ 49-51. "On March 11, 2015, the area of Keystone Drive directly below the [slope] was evacuated by the airport."

Pl. Compl. ¶ 55.  On March 12, 2015, the manmade slope collapsed, causing great damage to surrounding property.[1]  Pl. Compl. ¶ 14.

The collapse "led to the destruction of the [Carters'] home," and the loss of "most of their worldly possessions."  Pl. Compl. ¶¶ 14, 57.  They brought this lawsuit to seek compensation. The Carters filed claims against the Authority for strict liability, Pl. Compl. ¶¶ 58-64, and against the Authority, Triad Engineering, and Cast & Baker for negligence, Pl. Compl. ¶¶ 65-73, gross negligence, Pl. Compl. ¶¶ 74-75, public nuisance, Pl. Compl. ¶¶ 76-81, and private nuisance, Pl. Compl. ¶¶ 82-84, and they request punitive damages, Pl. Compl. ¶¶ 85-90.  In this same action, the Carters have also brought a "declaratory judgment action" against their homeowner's insurer, Nationwide Mutual Fire Insurance Company, Pl. Compl. at 14-22, based on its unwillingness to pay their claim resulting from the landslide.  All of their claims sound only in state law.

---

[1] The Yeager landslide has been the subject of extensive litigation.  In the earliest-filed case, Cent. W. Virginia Reg'l Airport Auth., Inc. v. Triad Engineering, Inc., No. 2:15-cv-11818, 2016 WL 685086 (S.D.W. Va. Feb. 18, 2016), the Authority sued contractors and other persons who were arguably responsible for designing and building the project, as well as a number of insurers.  Subsequent suits, including the present case, have been brought by owners of property destroyed in the collapse.  See also Brotherhood Mut. Ins. Co. v. Cent. W. Virginia Reg'l Airport Auth., Inc., No. 2:16-CV-03118, 2016 WL 3580786, at *1 (S.D.W. Va. June 28, 2016).

The procedural background of this case is somewhat Byzantine in its complexity.  As mentioned above, the Carters initially brought the case to recover damages for their destroyed home, suing the Authority, two contractors (Cast & Baker and Triad Engineering), and their homeowners' insurer (Nationwide Mutual Fire Ins. Co.).  After the Carters filed their complaint, Nationwide and Cast & Baker moved to dismiss, and the Authority and Triad Engineering filed answers along with cross-claims against the other defendants (with the exception of Nationwide).

On September 14, 2015, the state court granted the Authority's motion to file an amended answer and cross-claims, as well as a third-party complaint.[2]  The Authority's third-party claims added a number of new defendants,[3] and essentially raised the same claims that were pressed in the earlier Triad Engineering case, No. 2:15-CV-11818, 2016 WL 685086, regarding deficiencies in the overall design and construction of the manmade slope.

On that same day of September 14, 2015, one of the new third-party defendants, Engineered Arresting Systems Corporation

---

[2] The Authority's Amended Answer to Complaint, Amended Cross-Claims, and Third-Party Complaint is attached as part of Exhibit B, Part 1 to the Notice of Removal (ECF 1-2 at 78).
[3] The new defendants were Michael Baker International, West Virginia Paving, Senex Explosives, Engineered Arresting Systems Corporation, Royal Ten Cate, Inc., Novel Geo-Environmental, LLC, JMD Company, Inc., and Ohio Farmers Insurance Co.

d/b/a Zodiac ("Zodiac"), filed a notice of removal.  The Authority

alleged, in its third-party complaint, that Zodiac served as a

"manufacturer[] and/or distributor[] [of] the EMAS . . . and its

related components."  Authority's Third-Party Compl. ¶ 50.  The

notice stated that Zodiac had removed the case "pursuant to 28

U.S.C. §§ 1331, 1441, 1442, 1446, and 1367."  Notice of Removal at

1.  It stated, more particularly, that Zodiac wished to rely on

"28 U.S.C. § 1442(a) ('Federal Officer Removal Jurisdiction')" as

well as "the doctrine of complete preemption."  Notice of Removal

¶¶ 4-5.  A few days later, on September 17, Zodiac moved to

realign the parties in the case, contending that "[t]he Authority

has commandeered a suit concerning a single property . . . and

shoehorned into that claim a multi-million dollar controversy for

alleged property damage to the Yeager Airport, and damage to the

whole Keystone Drive community of Charleston, West Virginia.  The

Authority's claims are undeniably the 'primary and controlling

matter in dispute.'"  Mem. in Supp. of Mot. of Zodiac to Realign

the Parties. at 2-3.

        Days after Zodiac's removal, and prior to any answer by

the added defendants,[4] the Authority filed on September 23, 2015,

a notice voluntarily dismissing its entire third-party complaint

---

[4] See Fed. R. Civ. P. 41(c)("A claimant's voluntary dismissal [of
any counterclaim, crossclaim, or third-party claim] must be made:
before a responsive pleading is served . . . .").

against the new defendants, including Zodiac, and also dismissing
a number of the new cross-claims it had added against the original
defendants, Cast & Baker and Triad Engineering.[5] Consequently,
the only remaining claim that the Authority presses against anyone
in this action is a request for contribution and indemnity from
its original co-defendants, Triad Engineering and Cast & Baker.
<u>See</u> Am. Answer to Compl., Am. Cross-Claims and Third-Party Compl.
¶¶ 43-45.

Both the Carters and the Authority moved to remand on
October 14. The Authority first contends that Zodiac's notice of
removal failed to establish that it was acting under the direction
of a federal officer as required by 28 U.S.C. § 1442(a).
Authority's Mem. in Supp. of Mot. to Remand at 5-6. The Authority

---

[5] The notice states that:

> [The Authority] hereby voluntarily dismisses without
> prejudice Counts I through V, inclusive of paragraphs 4
> through 42, of its Amended Cross-Claims against
> Defendants Triad Engineering, Inc. and Cast & Baker
> Corporation.

> Defendant Authority also voluntarily dismisses without
> prejudice its Third-Party Complaint against Defendants
> Michael Baker International, Inc., West Virginia Paving,
> Inc., Senex Explosives, Inc., Engineered Arresting
> Systems Corporation dba Zodiac Arresting Systems
> America, Royal Ten Cate (USA), Inc., Novel Geo-
> Environmental, LLC, JMD Company, Inc., and Ohio Farmers
> Insurance Company in its entirety.

Def. Central Regional West Virginia Airport Auth. Not. of
Rule 41(c) Partial Voluntary Dismissal at 1-2 (ECF 13).

also states that Zodiac was not permitted to remove because "the preemptive effect of FAA regulation . . . does not . . . create a 'federal question' for removal," and instead supplies only a federal defense. <u>Id.</u> at 7-9.  Finally, the Authority contends that Zodiac was not permitted to remove under 28 U.S.C. § 1441 because it was a third-party defendant, and because it "lacked the required consent of the Authority to remove." <u>Id.</u> at 9-11.  The Carters make similar arguments, and also contend that Zodiac's absence from the case means that the court is permitted to exercise its discretion and remand it.  Pl. Mem. in Supp. of Mot. to Remand at 2.

Cast & Baker and Nationwide filed responses opposing the motions soon thereafter.  Cast & Baker contends that (1) dismissal of the litigant who effectuated removal does not affect the court's jurisdiction, (2) federal law completely preempts the state-law claims in the case, allowing for removal, (3) specific FAA regulations and directives allow for federal jurisdiction, and (4) should the court determine that the removal is procedurally defective for lack of consent by all defendants, the parties should be re-aligned.  <u>See</u> <u>generally</u> Cast & Baker's Resp. in Opp. to Mot. to Remand.

Nationwide's arguments as to why the court should exercise jurisdiction over this case are not completely clear.

Nationwide states that it has already filed, in federal court, a declaratory judgment action regarding its liability to the Carters under their homeowners' insurance policy, which is the only source of liability against Nationwide in the present case. Because of its earlier-filed suit, Nationwide suggests that the court is empowered to exercise jurisdiction over the present case, although it is not clear why this is so. See Nationwide's Resp. to Mot. to Remand at 4. Nationwide may also believe that the court has jurisdiction over the Carters' claims simply because they requested a declaratory judgment against Nationwide. Id. Nationwide notes, in particular, a number of policy reasons favoring federal jurisdiction in this case, including "comity and legal harmony" between federal and state courts, "a substantial risk of inconsistent judicial determinations," conservancy of judicial resources, and punishment of inappropriate forum-shopping behavior. Id. at 4-5.

On November 4, 2015, the Carters filed a reply to both Cast & Baker and Nationwide. Regarding Nationwide's response, the Carters state that (1) Nationwide's arguments did not address the key issues in the case, (2) it is permissible for federal and state courts to entertain suits concerning the same subject matter, and (3) in any case, the question of the Carters' right to join Nationwide as a party in this case should be addressed by the

state court at the motion-to dismiss stage.  See generally Pl.
Repl. to Nationwide in Supp. of Mot. to Remand.  Regarding Cast &
Baker's response, the Carters state that (1) Cast & Baker cites no
specific federal regulation or other federal material from which
the Carters' claims arise, such that the doctrine of complete
preemption will ground removal, (2) complete preemption only
applies where Congress intended to create an exclusive federal
cause of action, and (3) the parties should not be realigned.  See
generally Pl. Repl. to Cast & Baker in Supp. of Mot. to Remand.

        On June 15, 2016 the Carters filed a "Supplemental
Motion to Remand, Memorandum in Support Thereof, and to Seek
Incidental Modification of Time Frame Order."[6]  In the
"supplemental motion," the Carters recount various events that
they believe are relevant to this court's ruling, particularly the
remand of the earlier Triad Engineering case, as well as a number
of discovery-related activities in this and other cases.
Nationwide filed a response to the Carters' "Supplemental Motion,"

_____

[6] Inasmuch as it was effectively a surreply to the earlier round
of briefing on the motion to remand, the Carters should have
requested leave of the court to file their "supplemental motion."
See U.S. Dist. Ct. S.D.W.V. Local R. Civ. P. 7.1(a)(7).
Nationwide should also have requested the court's leave in
responding to the Carters' surreply.  Despite the parties' failure
to request leave to file these documents explicitly, the court
construes their filings as implicit requests to do so, and ORDERS
that the parties' implicit request for leave to file the
"supplemental" briefing on the motion to remand be, and it hereby
is, granted.

reiterating that the "federal officer" statute should allow for removal and contending that the present case is distinguishable from the Triad Engineering matter for various reasons, including the circumstance that the Authority is a defendant in this case, not the plaintiff.  Nationwide also reiterated its previous contention that this court should take jurisdiction over the present case because of its similarity to Nationwide's earlier-filed declaratory judgment action.  The Carters filed a reply to Nationwide's Response on July 6, 2016.

**Motion to Remand**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)(internal citations omitted).  Title 28 U.S.C. § 1441(a) governs the removal of cases where federal courts have original jurisdiction, and provides as follows:

> [A]ny civil action brought in a State court of which the
> district courts of the United States have original
> jurisdiction, may be removed by the . . . defendants . .
> . to the district court of the United States for the
> district and division embracing the place where such
> action is pending. . . .

28 U.S.C. § 1441(a).

The burden of establishing removal falls upon the removing party.  Mulcahey v. Colum. Organic Chem. Co., 29 F.3d 148, 151 (4th Cir. 1994).  Our court of appeals has observed that it is obliged to construe removal jurisdiction strictly:

> We have noted our obligation "to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated" by it.  Maryland Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005) (quoting Mulcahey, 29 F.3d at 151). . . . Consistent with these principles, we have recognized that state law complaints usually must stay in state court when they assert what appear to be state law claims.  See, e.g., Harless v. CSX Hotels, Inc., 389 F.3d 444, 450 (4th Cir. 2004); King, 337 F.3d at 424; Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 186 (4th Cir. 2002); Cook v. Georgetown Steel Corp., 770 F.2d 1272, 1274 (4th Cir. 1985).

Lontz v. Tharp, 413 F.3d 435, 440 (4th Cir. 2005).  Congress has intended that the federal courts "resolve all doubts about the propriety of removal in favor of retained state court jurisdiction."  Marshall v. Manville Sales, Corp., 6 F.3d 229, 232 (4th Cir. 1993).

The usual presumption against jurisdiction does not apply to "federal officer" removal, however, as "the right of removal conferred by § 1442(a)(1) is to be broadly construed."  Kolibash v. Comm. on Legal Ethics of W. Virginia Bar, 872 F.2d 571, 576 (4th Cir. 1989).  See also Watson v. Philip Morris Companies, Inc., 551 U.S. 142, 147 (2007)("[T]his Court has made clear that [§ 1442] must be 'liberally construed.'")(quoting

11

<u>Colorado v. Symes</u>, 286 U.S. 510, 517 (1932)); <u>In re Asbestos Products Liab. Litig.</u> (No. VI), 770 F. Supp. 2d 736, 741 (E.D. Pa. 2011)("While removal under 28 U.S.C. § 1441 is to be 'strictly' construed, with doubts resolved in favor of remand, the federal officer removal statute, by contrast, is to be 'broadly' construed in order to liberally grant federal officers access to a federal forum.").  As the parties have relied on § 1442 as one basis for jurisdiction, the court will not presume that federal jurisdiction is inapplicable when considering their arguments as to that provision.

<u>Discussion</u>

The court will first discuss the two grounds for removal specified in Zodiac's initial notice – the "federal officer" provision, 28 U.S.C. § 1442, and complete preemption.  The court then addresses other possible bases for removal, including Nationwide's discussion of its previously-filed declaratory judgment action.

A. <u>Federal Officer Removal</u>

As stated above, Zodiac's Notice of Removal mentioned 28 U.S.C. § 1442 as one basis for its removal, and asserted that "[r]emoval of this case is proper pursuant to 28 U.S.C. § 1442(a) ('Federal Officer Removal Jurisdiction') because at all times

relative to Plaintiffs' Complaint, Zodiac was acting under the
authority of and pursuant to direction and control by the Federal
Aviation Administration ('FAA')."  Not. of Removal at ¶ 4.
Section 1442 states as follows, in pertinent part:

> (a)  A civil action . . . that is commenced in a State
> court and that is against or directed to any of the
> following may be removed by them to the district court
> of the United States for the district and division
> embracing the place wherein it is pending:
>
>> (1)   The United States or any agency thereof or
>> any officer (<u>or any person acting under that
>> officer</u>) <u>of the United States or of any agency
>> thereof</u>, in an official or individual capacity, for
>> or relating to any act under color of such office
>> or on account of any right, title or authority
>> claimed under any Act of Congress for the
>> apprehension or punishment of criminals or the
>> collection of the revenue.

28 U.S.C. § 1442 (emphasis added).  In the Notice of Removal,
Zodiac stated that "The FAA's control, oversight, participation
and final design approval authority of the EMAS system designed by
Zodiac render this case removable under 28 U.S.C. § 1442(a)."
Not. of Removal at ¶ 15; <u>see also</u> ¶ 17 ("Second, based on the
level of control and oversight exerted by the FAA in the design
and construction of the EMAS system, Zodiac acted under the
direction of the FAA.").

1. **Departure of "Federal Officer" from the Lawsuit**

        Zodiac's Notice of Removal states only that Zodiac, and
not any other litigant, was a person acting under a federal
officer.  See Not. of Removal ¶ 17 ("Zodiac meets all criteria
required to assert Federal Officer Removal Jurisdiction)(emphasis
added); ¶ 17 ("[B]ased on the level of control and oversight
exerted by the FAA in the design and construction of the EMAS
system, Zodiac acted under the direction of the FAA.")(emphasis
added).  The notice also does not suggest that any other litigant
joined in Zodiac's effort to remove the case under § 1442, even
though it explicitly states that the other defendants consented to
removal based on the other proffered basis of federal
jurisdiction, complete preemption.[7]  As noted above, Zodiac has
now been dismissed from the case.

        "[Where] removal is proper but the federal officer is
dismissed, the court, in its discretion, may retain jurisdiction

---

[7] Compare Not. of Removal ¶ 26 ("With respect to removal under 28
U.S.C. § 1442, co-defendants' consent to removal is unnecessary.")
and Not. of Removal ¶ 27 ("With respect to removal under 28 U.S.C.
§ 1441 and in accordance with 28 U.S.C. § 1446(b)(2)(A) . . .
Defendants/Cross-Defendants Triad Engineering, Inc., Cast & Baker
Corporation, and Nationwide Mutual Fire Insurance Company, as well
as Third-Party Defendants Michael Baker International, Inc. a/k/a
Michael Baker Corporation, West Virginia Paving, Inc., Senex
Explosives, Inc., Zodiac, Royal Ten, Novel Geo-Environmental, LLC,
JMD Company, Inc., and Ohio Farmers Insurance Company have
consented to removal.").

over claims against the remaining defendants." <u>Chaplain v. Stark</u>, 535 F.2d 1249, 1248 (4th Cir. 1976)(unpublished opinion)(quoting 1A <u>Moore's Federal Practice</u> P 0.164[2], n. 42; citing <u>Murphy v. Kodz</u>, 351 F.2d 163 (9th Cir. 1965); <u>Galella v. Onassis</u>, 487 F.2d 986 (2nd Cir. 1973)).  <u>See also</u> <u>D.C. v. Merit Sys. Prot. Bd.</u>, 762 F.2d 129, 132-33 (D.C. Cir. 1985)("When federal parties remove an action under section 1442(a)(1)," and "the federal party is [later] eliminated from the suit . . . . the district court retains the power either to adjudicate the underlying state law claims or to remand the case to state court."); <u>IMFC Prof'l Servs. of Florida, Inc. v. Latin Am. Home Health, Inc.</u>, 676 F.2d 152, 160 (5th Cir. 1982)("[W]e hold that § 1442(a)(1), through its creation of an ancillary jurisdiction, confers discretion on the district court to decline to exercise continued jurisdiction over [the plaintiff's] claim once [the federal agency] dropped out of the case."); <u>Watkins v. Grover</u>, 508 F.2d 920, 921 (9th Cir. Cal. 1974)(stating that, when federal officer had departed the case, "the district court should decide whether to hear the suit on its merits or, in its discretion, to remand the suit to the state court from which it was removed").  When a federal officer departs, "the court will typically exercise its discretion to remand the case" after that officer's dismissal "pursuant to

Section 1447(c)."[8]  16-107 <u>Moore's Federal Practice - Civil</u> § 107.100 (2015); <u>see</u> <u>also</u> 28 U.S.C. § 1447(c)("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

Decisions from some courts of appeals suggest that a district court ordinarily should remand cases removed under § 1442 after the federal officer departs.  In <u>Merit Systems Protection Board</u>, the D.C. Circuit reversed a district court's denial of a motion to remand an action when the sole "federal party was eliminated shortly after removal" and the remaining portions of the case "implicate[d] complex local law questions" better addressed in District of Columbia courts rather than federal

---

[8] When only some part of a lawsuit is subject to federal jurisdiction, supplemental jurisdiction over state-law claims is generally governed by 28 U.S.C. § 1367.  The reason that § 1367 does not apply to removals pursuant to § 1442 is that § 1367 covers only cases in which district courts have original jurisdiction, and "federal officer" jurisdiction is not considered to be "original jurisdiction."  <u>See</u> 16-107 <u>Moore's Federal Practice - Civil</u> § 107 App.107 (2015)("Since removal jurisdiction under . . . §1442 . . . is not keyed to the original jurisdiction of the federal district court . . . [an] officer may remove a suit which is not within the original jurisdiction of the federal court."); <u>Jefferson County v. Acker</u>, 527 U.S. 423, 430-431 (U.S. 1999)("It is the general rule that an action may be removed from state court to federal court only if a federal district court would have original jurisdiction over the claim in suit. . . . Suits against federal officers are exceptional in this regard."); <u>Willingham v. Morgan</u>, 395 U.S. 402, 406 (1969)("[T]he right of removal under § 1442(a)(1) is made absolute whenever a suit in a state court is for any act 'under color' of federal office, regardless of whether the suit could originally have been brought in a federal court.").

court.  762 F.2d at 133.  In <u>Martinez v. Seaton</u>, the Tenth Circuit ruled that, after the district court recognized that the federal official who removed a case was improperly served, "the premise of removal to federal jurisdiction was eliminated and the action should have been remanded to the state court."[9]  285 F.2d 587, 589-590 (10th Cir. 1961).  This tendency is sensible: a case removed under the "federal officer" provision may be composed entirely of non-diverse parties litigating state-law claims. There is no good reason to keep such a dispute in federal court because an officer of the United States had a connection to it at an earlier time.

This case presents no atypical situation that would warrant the exercise of federal jurisdiction after the "federal officer" has departed.  The Notice of Removal describes only one litigant - Zodiac - as someone who "acted under the direction of a federal officer."  Zodiac is no longer present in the action. The remaining claims in this case, as discussed above, are purely state-law claims regarding construction defects, contribution, and indemnity.  Additionally, other cases related to the Yeager landslide have already been remanded to state court, and are pending before the Circuit Court of Kanawha County, where

---

[9] In both <u>Merit Systems Protection Board</u> and <u>Martinez</u>, the district court had dismissed the case rather than remanding it or retaining jurisdiction.

17

discovery and other proceedings are ongoing.  See Triad Engineering, No. 2:15-cv-11818, 2016 WL 685086; Brotherhood Mutual Insurance Company v. Central West Virginia Regional Airport Authority, Inc. et al, No. 2:16-cv-03118 (S.D.W. Va. June 28, 2016).  It will substantially conserve judicial resources for discovery in these matters to be handled by a single court, particularly because discovery is expected to be complex and extensive.  Indeed, the parties have recently requested an additional year to complete discovery, which will involve a "forensic investigation into the collapse of the . . . slope." See Joint Mot. to Continue Tort Claims to Allow for Completion of Forensic Investigation at 3-5, 7.  There is also risk of inconsistent adjudications in matters related to this important litigation, which will be eliminated if it is assigned to a single forum.  The better exercise of the court's discretion is plainly to remand this case to the state court.

### 2. Initial Propriety of "Federal Officer" Removal

The court stated, above, that even if this action had been properly removed pursuant to the "federal officer" statute, remand would be proper in light of Zodiac's departure from the action.  But in fact, removal of this matter under the "federal officer" statute, 28 U.S.C. § 1442(a), was decidedly improper in the first instance.  Consequently, this court never had

jurisdiction in the first place, and the action also must be remanded pursuant to 28 U.S.C. § 1447(c).

As stated above, § 1442(a) allows for removal when a state-court action is brought against "any officer (or <u>any person acting under that officer</u>) of the United States or of any agency thereof . . . for or relating to <u>any act under color of such office</u> . . . ." 28 U.S.C. § 1442(a)(emphasis added). The Notice of Removal contends that "at all times relative to Plaintiffs' Complaint, Zodiac was acting under the authority of and pursuant to direction and control by the Federal Aviation Administration." Not. of Removal ¶ 4. It states that the major portions of the project in dispute, particularly "RSAs [Runway Safety Areas], the FAA [Federal Aviation Administration's] RSA Program, EMAS system design, materials, proposals, quality assurance, inspection and maintenance are regulated by the Federal Aviation Administration ("FAA")." Not. of Removal ¶ 14. Consequently, in Zodiac's view, "The FAA's control, oversight, participation and final design approval authority of the EMAS system designed by Zodiac render this case removable under 28 U.S.C. § 1442(a)." Not. of Removal ¶ 15.

The Notice of Removal further states Zodiac's basis for believing that it could remove under § 1442(a):

19

16. As observed in Virden v. Altria Group, Inc., 304 F.Supp.2d 832, 843 (N.D. W. Va. 2004), in order to remove an action pursuant to 28 U.S.C. § § 1442(a), a defendant must establish that (1) it is a "person" within the meaning of the statute, (2) it acted under the direction of a federal officer, (3) it has a colorable federal defense to the plaintiffs' claims, and (4) there is a causal nexus or connection between the plaintiffs' claims and acts it performed under color of federal office.

17. In the present case, Zodiac meets all criteria required to assert Federal Officer Removal Jurisdiction. First, Zodiac is a person within the meaning of 28 U.S.C. § 1442(a).  See Virden, 304 F.Supp.2d 844 (noting that corporations are considered "persons" under 28 U.S.C. § 1442).

Second, based on the level of control and oversight exerted by the FAA in the design and construction of the EMAS system, Zodiac acted under the direction of the FAA.

Third, Zodiac has a colorable federal defense to the Authority's claims.  Because the FAA approved reasonably precise design specifications for the EMAS system, the EMAS system conformed to those specifications (as evidenced by the FAA's approval of Zodiac's design for the EMAS system), and Zodiac was unaware of any dangers in the use of the EMAS system, Zodiac can claim protection under the government contractor defense.  See Boyle v. United Technologies Corp., 487 U.S. 500, 108 S. Ct. 2510, 101 L.Ed.2d 442 (1988).

Fourth, there is a causal connection between the Authority's claims and acts Zodiac performed under color of federal office.  Specifically, the Authority alleges that Zodiac was negligent with respect to the design, construction, inspection, analysis, testing, engineering, supervision of and installation of the EMAS system.  Zodiac designed, inspected, analyzed and engineered the EMAS system subject to the oversight, control and approval of the FAA.

Not. of Removal ¶¶ 16-17.  As stated above, the Notice does not suggest that any other litigant had acted under the direction of a "federal officer."  <u>See</u>, <u>e.g.</u>, Not. of Removal ¶ 17 ("<u>Zodiac</u> meets all criteria required to assert Federal Officer Removal Jurisdiction)(emphasis added); ¶ 17 ("[B]ased on the level of control and oversight exerted by the FAA in the design and construction of the EMAS system, <u>Zodiac</u> acted under the direction of the FAA.")(emphasis added).[10]

The statements in the Notice of Removal, and in subsequent briefing by Cast & Baker and Nationwide, amount to a contention that very specific federal regulation governed the runway project.  <u>See</u>, <u>e.g.</u>, Not. of Removal ¶ 17 ("[B]ased on the

---

[10] The defendants' briefing adds almost no additional argument to the statements in the Notice of Removal respecting § 1442(a). Only a few sentences in Cast & Baker's original response to the motions to remand address the "federal officer" theory.  Cast & Baker's Resp. in Opp. to Mot. to Remand at 2 ("[Plaintiffs] further assert the . . . facts asserted under U.S.C. § 1442(a)(1) were not adequately plead to confer removal in this case.  The arguments set forth by Plaintiffs conflict with the prevailing view of the courts."); 6 ("[T]he Plaintiffs attempt to remand the case back to state court based on the 'federal officer' being dismissed from the case. . . . [B]ecause subsequent events should not alter this Court's jurisdiction, Plaintiffs['] procedural argument lacks merit and remand should be denied.").  Although Cast & Baker's response discusses the extensive federal oversight of the runway project, it appears to do so in the context of the complete preemption theory, not the "federal officer" theory. Nationwide's original response to the motions to remand did not mention the "federal officer" theory at all.  And, in Nationwide's response to the "Supplemental" motion to remand, it simply mentions that § 1442(a) is a proposed basis for removal, but does not add any additional argument.  Nationwide's Resp. to Supp. Mot. to Remand at 2.

level of control and oversight exerted by the FAA in the design and construction of the EMAS system, Zodiac acted under the direction of the FAA."); ¶ 15 ("The FAA's control, oversight, participation and final design approval authority of the EMAS [Engineered Material Arresting System] system designed by Zodiac render this case removable under 28 U.S.C. § 1442(a)."). Because of the high level of FAA oversight, Zodiac (and now Nationwide and Cast & Baker) contends, and the Authority and the Carters dispute, that Zodiac was a "person acting under [an] officer . . . of the United States or of any agency thereof," who is now being sued "for or relating to any act under color of such office." 28 U.S.C. § 1442(a).

Another way to describe the issue is "whether the fact that a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail brings that company within the scope of the [statute's] language . . . and thereby permits removal." Watson v. Philip Morris Companies, Inc., 551 U.S. 142, 145 (2007). The Supreme Court recently and unambiguously "h[e]ld that it does not." Id. In Watson, consumers sued the cigarette manufacturer Philip Morris for violating state laws regarding deceptive and unfair business practices. Id. at 146. The gist of the plaintiffs' claim was that Philip Morris manipulated its "light" cigarettes so that they

would "register lower levels of tar and nicotine" on official industry tests than in actual smoking conditions. <u>Id.</u> Philip Morris removed the case under the "federal officer" statute. The district court upheld the removal, stating that "the complaint attacked Philip Morris' use of the Government's method of testing cigarettes," and, consequently, "petitioners had sued Philip Morris for 'act[s]' taken 'under' the Federal Trade Commission (FTC), a federal agency (staffed by federal 'officer[s]')." <u>Id.</u> The Eighth Circuit affirmed, "emphasiz[ing] the FTC's detailed supervision of the cigarette testing process." <u>Id.</u> at 147.

The Supreme Court reversed, stating that "the help or assistance [of a federal official] necessary to bring a private person within the scope of the statute does <u>not</u> include simply <u>complying</u> with the law." <u>Id.</u> at 152 (emphasis in original). The Court went on to describe the scope of its decision:

> The upshot is that a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone. A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. A contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries.

551 U.S. at 153.

The language and reasoning of Watson directly foreclose the attempt to remove this case under the "federal officer" statute.  The parties who are asking this court to exercise jurisdiction simply claim that "highly detailed" "regulation" and highly "supervised and monitored" construction processes suggest that they were "acting under" a federal agency.  See Not. of Removal ¶ 17 ("[B]ased on the level of control and oversight exerted by the FAA in the design and construction of the EMAS system, Zodiac acted under the direction of the FAA.").  But Watson rejects this argument.

Highly persuasive authority confirms Watson's application to aviation law and its foreclosure of removal in this case.  In Lu Junhong v. Boeing Co., the Seventh Circuit applied Watson in rejecting the use of § 1442 in an aviation-related case with much stronger federal oversight of the defendants than in this action.  792 F.3d 805 (7th Cir. 2015).  In Lu Junhong, which related to the design of an airplane that had fallen apart during flight, Boeing contended not only that its activities were heavily regulated by the FAA, but that it had "authority to use FAA-approved procedures to conduct analysis and testing required for the issuance of type, production, and airworthiness certifications for aircraft under Federal Aviation Regulations."  Id. at 808.  Boeing contended that, "[i]n carrying out those functions, Boeing

is subject to FAA control, and it acts as a representative of the FAA Administrator." <u>Id.</u>  Judge Easterbrook, writing for the panel, rejected Boeing's contention that its "certification" authority meant that it was "acting under" the FAA in the sense required by § 1442.  <u>Id.</u>  He then went on to explain <u>Watson</u>'s application to the argument in favor of removal:

> This analysis implies that the right question is whether being subject to governmental requirements is enough to make a person one "acting under" the author of those regulations, for the purpose of § 1442.  And we know from <u>Watson v. Philip Morris Cos.</u>, that being regulated, even when a federal agency "directs, supervises, and monitors a company's activities in considerable detail" (<u>id.</u> at 145, 127 S.Ct. 2301), is not enough to make a private firm a person "acting under" a federal agency.

<u>Id.</u> at 809 (internal citations abridged).  An impressive number of district courts, also following <u>Watson</u>, have similarly ruled that private companies engaged in aviation-related work may not remove under § 1442 merely because of their compliance with government rules.  <u>See</u>, <u>e.g.</u>, <u>Dietz v. Avco Corp.</u>, No. CV 15-4324, 2016 WL 913267 (E.D. Pa. Mar. 10, 2016); <u>Barber v. Avco Corp.</u>, No. CV 15-03146, 2015 WL 7180507 (E.D. Pa. Nov. 16, 2015); <u>Swanstrom v. Teledyne Continental Motors, Inc.</u>, 531 F.Supp.2d 1325 (S.D. Ala. 2008).

If persons who design airplanes, and who certify portions of those designs on behalf of the FAA, are not "acting under a federal officer" per § 1442, then the present dispute,

which merely involves federal regulation and associated
supervision of construction projects, will not benefit from §
1442.  Certainly the defendants in this case have made no argument
suggesting that they are regulated or supervised more
substantially than those who construct aircraft.  And they have
raised no suggestion that the FAA delegates them authority in a
way stronger than Boeing's certification power in Lu Junhong.

Courts have allowed removal under § 1442 for aviation-
related work after Watson only when the federal government
directly hires a contractor to perform particular types of
functions on its behalf.[11]  Bennett v. MIS Corp., 607 F.3d 1076
(6th Cir. 2010); Boyd v. Boeing Co., No. 15-0025, 2015 WL 4371928
(E.D. La. July 14, 2015)(allowing Boeing to remove where mechanic
claimed to have contracted mesothelioma while working on U.S.
military plane made by Boeing); Scrogin v. Rolls-Royce Corp., No.
3:10-cv-442 WWE, 2010 WL 3547706 (D. Conn. Aug. 16, 2010)(allowing
Rolls-Royce to remove based on injury suffered in a helicopter

---

[11] The only case that appears to have bucked this trend is Weidler
v. Prof'l Aircraft Maint., No. 10-09376 SJO CWX, 2011 WL 2020654
(C.D. Cal. May 13, 2011), but it did not cite Watson, and has been
criticized as inconsistent with prevailing authority.  Barber v.
Avco Corp., 2015 WL 7180507, at *6 (E.D. Pa. Nov. 16,
2015)("Notwithstanding Watson, the Weidler court found one of the
defendants was entitled to removal under Section 1442(a)(1) for
the same reasons Watson and later Lu Junhong hold insufficient,
namely that the removing defendant 'was acting pursuant to an Air
Agency Certificate issued by the FAA.'").

built for the U.S. military).  This trend is consistent with Watson, which distinguished a company's "simpl[e] compliance" with the law from its "perform[ing] a job that, in the absence of a contract with a private firm, the Government itself would have had to perform."  551 U.S. at 154.  As Watson explained, where a "private contractor . . . is helping the Government to produce an item that it needs," removal under § 1442 may be appropriate.  Id. Consequently, in some aviation-related cases, private companies have been found to be performing a job on behalf of the federal government.

In Bennett, the Sixth Circuit allowed removal by a company, MIS Corp., that the FAA hired to clean mold from an air traffic control tower.  607 F.3d 1076.  The court explained how the company's work on behalf of the FAA was distinguishable from the activities in Watson:

> Unlike the cigarette manufacturer in Watson, MIS's assistance went beyond "simple compliance with the law." MIS helped FAA officers carry out their task of ridding a federal employee occupied building of an allegedly hazardous contaminant — "a job that, in the absence of a contract with [MIS] [or another private mold remediation firm] the [FAA] itself would have had to perform." Under these facts, we conclude that the contractual "relationship between [MIS] and [the FAA] [was] an unusually close one[,] involving detailed regulation, monitoring, [and] supervision."  For these reasons, we conclude that MIS has satisfied § 1442(a)(1)'s "acting under" requirement.  See Watson, 551 U.S. at 148, 127 S.Ct. 2301.

27

607 F.3d at 1088 (internal citations omitted).  The court in Bennett also discussed the FAA's extremely thorough supervision of MIS's completion of the project, which included, for example, a requirement that "waste is to be double bagged in labeled 6—mil polyethylene bags," with "[e]ach bag . . . adequately sealed" and that "[t]he exterior bag is to be . . . vacuumed in the equipment room . . . prior to exiting to work area."  Id. at 1087.  The government also posted supervisory officers on-site, who had the authority to fire MIS's employees and control their working hours. Id. at 1087-88.

The present case is far removed from the circumstances in Bennett.  Here, there is no suggestion that defendants were ever hired by the FAA, the federal agency that they claim to have "act[ed] under."  There is particularly no suggestion that the FAA engaged any of the defendants to complete "a job that, in the absence of a contract with [the] private firm, the [FAA] itself would have had to perform."  In fact, the defendants were engaged by the Authority, the non-federal body administering Yeager. Moreover, defendants have not suggested that the FAA exercised the type of day-to-day control over their work described in Bennett, such as full-time, on-site supervision and particular direction as to work activities.  To the contrary, the voluminous regulatory materials that defendants cite, largely without explanation,

appear to refer almost exclusively to design and construction requirements, and mention, only briefly, requirements for pre-approval of plans and for inspection of finished projects. [12]

---

[12] The Advisory Circulars cited in the removal notice appear to refer almost exclusively to construction requirements for airport projects, and discuss only briefly any duty to gain FAA approval of plans or construction work.  See FAA Advisory Circular Nos. 150/5300-13 (September 29, 1989)(providing FAA standards for airport design), 150/5300-13A (September 28, 2012)(providing FAA standards for airport design, updated with new standards for taxiway design), 150/5220-22B (September 27, 2012)(providing standards for the planning, design, installation, and maintenance of EMAS systems), 150/5220-22A (September 30, 2005)(providing standards for the planning, design, installation, and maintenance of EMAS systems).  Of the two FAA Orders cited, one provides very general comments regarding FAA certification and requirements of RSAs, see FAA Order 5200.8, and the other gives comments comparing different runway-safety projects, see FAA Order 5200.9.  None of these documents appears to mention on-site involvement of government officials while work is ongoing.

         In any case, the court considers defendants to have waived any argument regarding the specific requirements of these agency documents, inasmuch as they provided almost no discussion of the documents' content in their briefing.  See Not. of Removal ¶ 14 (citing various advisory circulars and FAA orders without elaboration); Cast & Baker's Resp. in Opp. to Mot. to Remand at 8 (mentioning advisory circulars without elaboration).  "Judges are not like pigs, hunting for truffles buried in briefs" or in the materials they cite.  United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991); cf. Cent. W. Virginia Reg'l Airport Auth., Inc. v. Triad Eng'g, Inc., No. 2:15-CV-11818, 2016 WL 661587, at *9 (S.D.W. Va. Feb. 18, 2016)("It defies the Rules of Civil Procedure to require plaintiffs to pan for gold in an ocean of potential theories of removal raised by voluminous materials cited in passing.")(discussing same string citation of FAA materials in nearly-identical removal notice).

         The removal notice also cites several extensive regulations and major pieces of federal legislation, and the court assumes that the relevant portions of these materials are the ones developed by defendants in later briefing regarding their complete preemption theory.  It is otherwise not clear how these materials establish the close government supervision of their work required for removal under § 1442.

There appears to be no mention of any day-to-day, in-person government supervision over minute details of work.  These documents reflect the stock-in-trade of ordinary regulation in a highly regulated industry, nothing more.  In sum, FAA regulations were the extent of the federal engagement with defendants' work in this case.

Cast & Baker also contends that this case should be removable because the project was "built with federal funding," and, in return for this federal funding, "the project [was] directly regulated and controlled by the FAA in both design and construction."  Cast & Baker's Resp. in Opp. to Mot. to Remand at 8-9.  Cast & Baker cites no authority suggesting that federal funding itself makes a difference in determining whether a case is removable under § 1442.  To the extent that the funding is intended to illustrate the control that the FAA exercised over the construction project, it fails to demonstrate any close agency supervision, or that the project was a task that, in the absence of the contractors' participation, "the [FAA] itself would have had to perform."  Moreover, a ruling that federal funding and supervision of a project allows removal under § 1442 would greatly expand the scope of the statute, allowing removal in a range of cases where persons receive federal monies to perform tasks for state and local governments.  Again, Cast & Baker offers no

authority suggesting that § 1442 has been held to sweep so broadly.

Based on the foregoing, the court concludes that it has never had jurisdiction over this case under the "federal officer" statute. As explained above, even if jurisdiction had originally existed, the prudent course would be to remand the case in light of Zodiac's departure. But the lack of jurisdiction in the first instance cements the conclusion that the case should be remanded.

B. <u>Complete Preemption</u>

The court next addresses the contention that this case is removable pursuant to the doctrine of complete preemption.[13]

1. <u>Complete Preemption: Legal Standard</u>

"Complete preemption," a "term of art," "refers to that small category of statutes that [. . .] authorize removal of actions that sought relief only under state law." <u>Lontz v. Tharp</u>, 413 F.3d 435, 438 (4th Cir. 2005). Under the doctrine of complete preemption, removal is appropriate "if the subject matter of a putative state law claim has been totally subsumed by federal law

---

[13] The determination of whether complete preemption applies here will rely on principles similar to those that were operative in the earlier <u>Triad Engineering</u> matter. No. 2:15-cv-11818, 2016 WL 685086.

– such that state law cannot even treat on the subject matter." Id. at 439-40.

Complete preemption applies only where Congress creates an exclusive federal cause of action covering the plaintiff's claim.  In Beneficial Nat'l Bank v. Anderson, for example, the Supreme Court held that remedial provisions of the National Bank Act created an exclusive cause of action for usury claims against a national bank, thus completely preempting state-law usury claims and allowing removal.  539 U.S. 1 (2003).  The Court framed the issue of complete preemption as follows:

> Does the National Bank Act provide the exclusive cause of action against national banks?  If so, then the cause of action necessarily arises under federal law and the case is removable.  If not, then the complaint does not arise under federal law and is not removable.

539 U.S. at 9; see also Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987)(noting that Taylor's claim "falls directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes"); Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557 (1968) (holding that Labor Management Relations Act created exclusive federal cause of action for the violation of agreements to arbitrate grievance disputes, thus completely preempting state lawsuits to enforce such agreements).  Similarly, our court of appeals has "repeatedly recognized [that] the sine qua non of complete preemption is a

pre-existing federal cause of action that can be brought in the district courts [. . . .] ." Johnson, 781 F.3d at 702 (internal quotations and citations omitted); see also Pinney, 402 F.3d at 449 ("To remove an action on the basis of complete preemption, a defendant must establish that the plaintiff has a 'discernible federal [claim]' and that 'Congress intended [the federal claim] to be the exclusive remedy for the alleged wrong.'")(quoting King v. Marriott Intern. Inc., 337 F.3d 421, 425 (4th Cir. 2003)(alterations in original)).

The doctrine of complete preemption appears to be justified by the view that, in creating an exclusive cause of action, Congress intends to allow removal of competing state-law claims. Admittedly, the Court's decisions have given conflicting statements as to whether complete preemption may be invoked because Congress intends for certain causes of actions to be removable, see Taylor, 481 U.S. at 66 (noting Congress's "clear intention to make § 502(a)(1)(B) suits . . . federal questions for the purposes of federal court jurisdiction"), or whether Congress's creation of an exclusive cause of action in and of itself, rather than a specific intention to make a cause of action removable, is the doctrine's ultimate basis, see Beneficial Nat'l Bank, 539 U.S. at 10 n.5 ("[T]he proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive

33

rather than on whether Congress intended that the cause of action be removable."). A commentator notes, however, that the Court's apparent "shift in focus - from inquiring directly whether Congress intended to create removal jurisdiction to inquiring whether Congress intended to create an exclusive federal cause of action - is sensible only if the latter is a good proxy for the former." Gil Seinfeld, The Puzzle of Complete Preemption, 155 U. Pa. L. Rev. 537, 556 (2006-2007).

Moreover, suggestions that the doctrine is based in other policies – such as the desire to limit state-court errors – draw little support from the Court's majority opinions while attracting criticism from others. See Beneficial Nat'l Bank, 539 U.S. at 20-21 (Scalia, J., dissenting)(noting that "it is up to Congress, not the federal courts, to decide when the risk of state-court error with respect to a matter of federal law . . . [will] justify divesting the state courts of authority").

In sum, the most defensible view remains that removal is permitted when Congress creates exclusive causes of action because the Court believes that Congress, by creating an exclusive cause of action on some subject, shows its intention to allow removal of state-law claims on that subject.

Complete preemption applies only when the particular

party who brought the lawsuit in state court is empowered to use Congress's exclusive remedy.  <u>Franchise Tax Bd. v. Const. Laborers Vac. Trust</u>, 463 U.S. 1, 24 (1983).  In <u>Franchise Tax Bd.</u>, a trust regulated by the Employee Retirement Income Security Act ("ERISA") was not permitted to remove a lawsuit filed by California's state tax authority.  463 U.S. at 27.  The Court observed that Congress had created an enforcement provision within ERISA, § 502(a), and acknowledged that "[i]t may be that . . . any state action coming within the scope of § 502(a) of ERISA would be removable to federal district court, even if an otherwise adequate state cause of action were pleaded without reference to federal law."  <u>Id.</u> at 24.  But the Court found that "ERISA carefully enumerates the parties entitled to seek relief under § 502; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action for a declaratory judgment on the issues in this case."  <u>Id.</u> at 27.  "A suit for similar relief by some other party," such as California's tax collecting authority, "does not 'arise under' that provision" and therefore could not be removed.  <u>Id.</u>  The Court made good on this distinction in <u>Taylor</u>, in which a beneficiary of an ERISA-regulated plan brought suit and the Court allowed defendants to remove the case under § 502.  481 U.S. 58.

## 2. <u>Field and Complete Preemption Distinguished</u>

Defendants contend that this case is removable because federal legislation has preempted the field of aviation and airport safety.[14]  That position, however, overlooks the important distinction between complete preemption and field preemption.

Federal courts recognize three distinct types of preemption: conflict preemption, field preemption, and complete preemption.[15]  <u>See</u> 15-103 Moore's Federal Practice - Civil § 103.45[2].  In the first, and likely most familiar, type of preemption, "'conflict' preemption, the state cause of action is superseded because it directly clashes with - and therefore undermines - federal law."  <u>Id.</u>; <u>see also</u> <u>California v. ARC Am. Corp.</u>, 490 U.S. 93, 100-01 (1989)("[S]tate law is . . . pre-empted to the extent it actually conflicts with federal law, that is, when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and

---

[14] <u>See</u>, <u>e.g.</u>, Cast & Baker's Resp. in Opp. to Pl. Mot. to Remand at 3 ("[T]his case was removed based on implied field preemption"); 6 ("The United State Supreme Court has held that the federal government can occupy a field 'so completely as to bar state intervention of any kind.'  This includes civil liability in a state tort system under which these Plaintiffs now seek recovery in this case.")(internal citation omitted).
[15] These three categories relate to the preemptive effect of a statute.  Courts also distinguish between express and implied preemption, but that distinction relates only to the manner in which Congress effected preemption (whether implicit or explicit) and not to the scope of the preemption.

execution of the full purposes and objectives of Congress.")(internal quotation marks and citations omitted).

As the Court noted in ARC Am. Corp., impossibility of compliance with both state and federal law is unnecessary for "conflict" preemption to apply.  In some settings, of course, the Court has invalidated state laws where complying with both state and federal requirements is actually impossible.  See, e.g., Mut. Pharm. Co. v. Bartlett, 133 S. Ct. 2466, 2473 (2013) (noting that "it has long been settled that state laws that conflict with federal law are without effect," and "it was impossible for Mutual to comply with both its state-law duty to strengthen the warnings on sulindac's label and its federal-law duty not to alter sulindac's label.  Accordingly, the state law is pre-empted.")(internal quotation marks and citations omitted).

The next type of preemption, "'field' preemption," applies when "Congress . . . intended 'to foreclose any state regulation in [an] area,' irrespective of whether state law is consistent or inconsistent with 'federal standards.'"  Oneok, Inc. v. Learjet, Inc., 135 S.Ct. 1591, 1595 (2015)(quoting Arizona v. United States, 132 S.Ct. 2492, 2502 (2012))(emphasis in original). In Arizona v. United States, for example, the Court held that several provisions of Arizona's state laws governing illegal aliens were preempted by federal law because "the Federal

Government has occupied the field of alien registration." 132
S.Ct. at 2502.  In Oneok, the Court denied defendants' motion for
summary judgment, which relied on the doctrine of field
preemption, because Congress had not preempted the field of
natural gas regulation so thoroughly as to displace state
antitrust laws.  135 S.Ct. 1591.  Thus, the Oneok Court made clear
that, notwithstanding the inapplicability of field preemption, the
doctrine of "conflict pre-emption" may well still have
application, and "should prove sufficient to address" any
conflicts between state and federal law.  Id. at 1602.

        Both field preemption and conflict preemption supply
defenses to state-law claims.  See 15-103 Moore's Federal Practice
- Civil § 103.45[2] ("'Avoidance' means that the defendant is
relying on federal law to defeat – or 'avoid' – the state claim.
The goal is dismissal. . . . A state court defendant may rely on
either conflict or field preemption for avoidance purposes if a
state cause of action aids plaintiffs in a manner not contemplated
by federal law.").  A successful showing of conflict or field
preemption, in either a state or federal court, generally results
in the dismissal of a state-law claim.  In certain circumstances,
preemption may be used as a "defense" in advance, to halt the
operation of state law before it is enforced.  See, e.g., Arizona
v. United States, 132 S.Ct. 2492 (enjoining operation of state

                              38

immigration law where relevant field was preempted).

Rather than eliminating liability under state law, the third type of preemption, "complete preemption," "transforms state causes of action into claims under [a] federal statute."  15-103 Moore's Federal Practice - Civil § 103.45[2].  "It in no way avoids or defeats plaintiff's suit; the goal is to establish federal jurisdiction."  Id.  In essence, a litigant who removes under the theory of complete preemption is arguing that

> federal law is so pervasive in its reach that, even
> though the plaintiff has characterized the suit as
> state-based, it must be deemed federal in nature, [and]
> the defendant is merely attempting to recharacterize
> plaintiff's claim as federal, rather than state.  Put
> another way, in complete preemption cases, federal law
> so transforms the substantive area that any complaint
> alleging facts that come within the statute's scope
> necessarily "arises under" federal law, even if the
> plaintiff pleads a state law claim only.

Id.  Complete preemption's transformation of a state cause of action into a federal one, and its empowerment of litigants to remove, distinguish it from field and conflict preemption.  The Supreme Court has clarified, repeatedly, that the "defensive" theories – conflict and field preemption – may not serve as bases for removal.  See, e.g., Beneficial Nat'l Bank, 539 U.S. at 13 ("[A] case may not be removed to federal court on the basis of [. . .] the defense of pre-emption [. . . .]")(quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987))(alterations and

emphasis in original); <u>Franchise Tax Bd.</u>, 463 U.S. at 14 ("[S]ince 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption . . . .").

Beyond serving a different purpose from field and conflict preemption, invocation of complete preemption also demands a different justification in legislative materials.  As discussed above, complete preemption applies only where Congress creates an exclusive federal cause of action.  <u>See</u>, <u>e.g.</u>, <u>Beneficial Nat'l Bank</u>, 539 U.S. at 9 ("Does the National Bank Act provide the exclusive cause of action against national banks? If so, then the cause of action necessarily arises under federal law and the case is removable.");  <u>Taylor</u>, 481 U.S. at 63 (noting that Taylor's claim "falls directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes").  This analysis differs markedly from the test for field preemption, which asks whether "Congress . . . intended to foreclose any state regulation" in a particular area.  <u>Oneok, Inc. v. Learjet, Inc.</u>, 135 S.Ct. at 1595.  Congress plainly can foreclose state regulation in an area without creating an exclusive federal cause of action in that area.  <u>See</u>, <u>e.g.</u>, <u>Kurns v. R.R. Friction Prods. Corp.</u>, 132 S.Ct. 1261 (2012).  The complete preemption analysis also differs fundamentally from the

40

conflict preemption question of whether state law "actually

conflicts with federal law . . . or . . . stands as an obstacle to

the accomplishment and execution of the full purposes and

objectives of Congress," <u>ARC Am. Corp.</u>, 490 U.S. at 100-01,

neither of which requires a federal cause of action.

A final distinction between complete and field

preemption deserves mention.  Because complete preemption may be

invoked only where an exclusive federal cause of action governs a

lawsuit, its applicability also depends on the particular person

suing rather than just the area of law in question.  In this way,

it differs greatly from field preemption.  Thus, for example, the

Court's holding in <u>Arizona</u> - that the field of immigration law is

preempted by Congress – provides a defense that anyone may use in

response to enforcement of a state immigration statute.  132 S.Ct.

2492.  But the holding in <u>Taylor</u> - providing that ERISA completely

preempts certain types of state-law claims governing insurance

benefits – is useful only to the persons allowed to sue under

ERISA's cause of action.  481 U.S. 58; see also <u>Franchise Tax Bd.</u>,

463 U.S. 1, 24, 27 (rejecting complete preemption of suit brought

by party not enumerated in ERISA's cause of action).

Commentators suggest that "[t]he lower federal courts

have had difficulty understanding and applying the Supreme Court's

distinction between complete preemption and other preemption

41

defenses that do not provide for federal jurisdiction under the well-pleaded complaint rule." 15-103 Moore's Federal Practice - Civil § 103.45[3]. Some courts have also noted widespread confusion about the distinction between field and complete preemption, while also recognizing the distinct features of each of the doctrines. See Retail Property Trust v. United Broth. of Carpenters and Joiners of Am., 768 F.3d 938, 948-49 (9th Cir. 2014)("We have occasionally — and always casually — equated complete preemption with field preemption. . . . But it is also clear that field preemption and complete preemption are not co-extensive. For now, it is enough to say that the doctrines serve distinct purposes and should be kept clear and separate in our minds.")

Review of the Supreme Court's recent opinion in Kurns v. R.R. Friction Prods. Corp., 132 S.Ct. 1261, will help clarify the distinctions between the two doctrines. In Kurns, a deceased railroad worker's estate sued makers and distributors of locomotive products, contending that the products contained asbestos, and that plaintiff had been exposed to the asbestos and injured by it. Id. at 1264. His complaint alleged state-law claims of design defects and failure to warn. Id. Defendants argued that the plaintiff's state-law claims had been preempted by the Locomotive Inspection Act, 49 U.S.C. § 20701 et seq., and the

42

district court granted summary judgment to defendants on that
basis.  Id. at 1264-65.  The court of appeals affirmed, and the
Supreme Court granted certiorari to decide whether the grant of
summary judgment was appropriate based on the preemption defense.
Id.

In its affirmance, the Court determined that the
Locomotive Inspection Act preempted plaintiff's state-law claims.
In so deciding, the Court relied on "so-called field preemption,"
which turns on the question of whether "the scope of a [federal]
statute indicates that Congress intended federal law to occupy a
field exclusively."  132 S. Ct. at 1266 (internal quotations and
citation omitted)(alteration in original).  Largely relying on its
previous holding in Napier v. Atlantic Coast Line R. Co., 272 U.S.
605 (1926), the Court found that the Locomotive Inspection Act
indeed "'manifest[s] the intention to occupy the entire field of
regulating locomotive equipment[.]'"  Kurns, 132 S. Ct. at 1266
(quoting Napier, 272 U.S. at 611)(alterations in original).  Key
to this holding in Napier, and to the Court's reiteration of it in
Kurns, was Congress's broad grant of power to the Interstate
Commerce Commission in the Locomotive Inspection Act, which
"extends to the design, the construction and the material of every
part of the locomotive and tender and of all appurtenances."
Kurns, 132 S. Ct. at 1266 (quoting Napier, 272 U.S. at 611).

Several features of <u>Kurns</u> distinguish it from complete preemption cases.  First, it did not consider the Court's jurisdiction — as would have been the subject of a complete preemption analysis - but instead whether summary judgment had been appropriate.[16]  Second, the Court did not suggest that the Locomotive Inspection Act created an exclusive federal cause of action (or, for that matter, any federal cause of action), whereas one would have been required for a complete preemption claim. Instead, the Court simply asked whether "Congress intended federal law to occupy a field exclusively."  132 S. Ct. at 1266.  And, because no federal cause of action demanded analysis, the Court did not consider whether plaintiff was permitted to sue under it. See <u>Franchise Tax Bd.</u>, 463 U.S. at 24, 27.  Rather, the Court determined that the defendant was afforded the defense of field preemption against the plaintiff's state-law claims, as field preemption is by its nature a defensive doctrine.  See <u>Kurns</u>, 132 S. Ct. at 1270 ("[W]e hold that petitioners' state-law design-defect and failure-to-warn claims fall within the field of locomotive equipment regulation pre-empted by the LIA . . . .").  These distinctions should appear each time a court considers field, rather than complete, preemption.

---

[16] Indeed, the case was removed on the basis of diversity jurisdiction, not complete preemption.  See <u>Kurns v. A.W. Chesterton Inc.</u>, 620 F.3d 392, 393 (3d Cir. 2010), aff'd sub nom. <u>Kurns v. R.R. Friction Products Corp.</u>, 132 S. Ct. 1261 (2012).

### 3. <u>Application of the Complete Preemption Standard</u>

In both the Notice of Removal and the briefing on the Motion to Remand, defendants argue that this action is removable because federal statutes have completely preempted state laws regarding aviation safety.[17]  As explained above, the parties seeking removal must point to an exclusive federal cause of action that covers the present type of dispute in order to remove the case under the doctrine of complete preemption.

### a. <u>The Federal Aviation Act</u>

Defendants suggest that remedial provisions in 49 U.S.C. § 46108 completely preempt plaintiff's state-law claims.[18]  This cause of action falls within the Federal Aviation Act, which is codified at Title 49, Subtitle VII, Part A of the U.S. Code ("Part A" or "the Aviation Act").[19]

---

[17] <u>See</u> Not. of Removal ¶ 5 ("Removal of this case is proper pursuant to 28 U.S.C. §§ 1441 and 1331 ('federal question') because it presents a federal question under the [Federal Aviation Act] and/or the [Airline Deregulation Act] based on the doctrine of complete preemption."); Cast & Baker's Resp. in Opp. to Pl. Mot to Remand at 6-7.

[18] In the <u>Triad Engineering</u> case, the defendants also suggested that 49 U.S.C. §§ 46101-07 could provide a federal cause of action, and the court rejected that view.  Defendants in this case do not rely on §§ 46101-07, so the court need not consider whether those provisions supply an exclusive federal cause of action allowing for complete preemption.

[19] The Federal Aviation Act and the Airline Deregulation Act were enacted in 1958 and 1978, respectively, but, strictly speaking,

The court notes that defendants face an uphill battle in arguing that the Aviation Act provides a private right of action allowing complete preemption in this case.  See John C. Nettels, Jr. and Jerrick L. Irby, Standard of Care Preemption in Aviation Litigation: Halting Steps to a Coherent Analysis, 76 J. Air L. & Com. 327, 345 (2011)(discussing complete preemption and removal allowed under Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005), and stating that "[b]oth of these [theories] have been asserted in aviation safety litigation but with limited success").  Federal courts have noted that the Aviation Act generally lays out a system of public, not private, enforcement.  See Bonano v. East Carribean Airline Corp., 365 F.3d 81, 85 (1st Cir. 2004)(discussing generally the Act's remedial structure).  Commentators have also observed that "[t]he majority of the cases under the safety provisions of the Act have held that a private action was neither intended nor envisioned by Congress as a means of enforcement of these provisions."  James D. Crawford and Deena Jo. Schneider, The Implied Private Cause of Action and

---

these laws are no longer operative in their original forms.
Public Law 103-272, enacted in 1994, recodified some portions of
the U.S. Code governing transportation, and, in doing so, largely
replaced the original provisions of the Federal Aviation Act and
the Airline Deregulation Act with equivalent but stylistically
improved provisions.  See DiFiore v. Am. Airlines, Inc., 646 F.3d
81, 85 (1st Cir. 2011)(quoting H.R. Rep. No. 103-677, at 83 (1994)
(Conf. Rep.))(noting that changes in the 1994 recodification "were
stylistic and 'not intend[ed] to impair the applicability of prior
judicial case law interpreting these provisions'").

the Federal Aviation Act: A Practical Application of Cort v. Ash, 23 Villanova L. Rev. 657, 668 (1977-1978)(collecting cases).

Moreover, in the late 1960s, "Congress considered and rejected a bill which would have created a federal cause of action and exclusive federal jurisdiction for injuries arising out of aircraft crashes." Obenshain v. Halliday, 504 F. Supp. 946, 950 (E.D. Va. 1980)(citing Aircraft Crash Litigation Hearings before Subcommittee on Improvements in Judicial Machinery on S. 961, 91st Congress, First Session (1969); Aircraft Crash Litigation Hearings before Subcommittee on Improvements in Judicial Machinery on S. 3305 and S. 3306, 90th Congress, Second Session (1968)); see also Crawford and Schneider, The Implied Private Cause of Action and the Federal Aviation Act, 23 Villanova L. Rev. at 668 ("Congress considered – but did not pass – a bill to provide for a federal cause of action for injuries arising out of aircraft disasters.") (citation omitted).  Because Congress made a clear choice not to include a broad provision allowing suit in the federal system, the court is inclined to read the Aviation Act's existing remedial provisions narrowly.

> b. The Proposed Exclusive Federal Cause of Action

The provision of the Federal Aviation Act that defendants believe will ground complete preemption is codified at

49 U.S.C. § 46108, which reads as follows:

> § 46108. Enforcement of certificate requirements by
> interested persons
>
> An interested person may bring a civil action in a
> district court of the United States against a person to
> enforce section 41101(a)(1) of this title. The action
> may be brought in the judicial district in which the
> defendant does business or the violation occurred.

49 U.S.C. § 46108.  This section thus provides a private right of

action, within the federal district courts, to enforce §

41101(a)(1).  Section 41101(a)(1) reads as follows:

> § 41101. Requirement for a certificate
>
> (a) General. — Except as provided in this chapter or
> another law —
>
>> (1) an air carrier may provide air transportation
>> only if the air carrier holds a certificate issued
>> under this chapter authorizing the air
>> transportation;

49 U.S.C. § 41101(a)(1).  Section 41101(a)(1) requires that an

"air carrier hold[] a certificate issued under this chapter" in

order to "provide air transportation."  Section 46108, the

provision invoked by defendants, thus allows "an interested

person" to "bring a civil action" to enforce the requirement that

air carriers hold certificates issued under the Act if they are to

"provide air transportation."  49 U.S.C. §§ 46108, 41101(a)(1).

Federal courts have found that section 46108 is a

"narrow exception," indeed "isthmian in its scope," to the Act's lack of private rights of action, and that it "is aimed at conflicts between carriers." <u>Bonano</u>, 365 F.3d at 85. Courts have allowed parties to use § 46108 and its statutory predecessors for the narrow purpose of enforcing certification requirements against carriers who either operate without certifications or exceed the scope of their certifications. <u>See</u> <u>World Airways, Inc. v. Northeast Airlines, Inc.</u>, 349 F.2d 1007 (1st Cir. 1965) (allowing suit against airline and travel agency for exceeding the scope of activity allowed in a government-issued certificate). By contrast, courts have rejected attempts to invoke section 46108 where the action complained of is not directly related to those issues. <u>See, e.g.,</u> <u>Schmeling v. NORDAM</u>, 97 F.3d 1336, 1344 (10th Cir. 1996)("Schmeling interprets § 46108 as allowing enforcement of all FAA regulations by an 'interested person,' but the statute clearly limits such actions to those enforcing § 41101(a)(1), which requires air carriers to hold FAA certificates."); <u>Weiss v. El Al Airlines, Ltd.</u>, 433 F.Supp.2d 361, 370 n.11 (S.D.N.Y. 2006)(declaring § 46108 irrelevant where passengers brought suit against an airline after they were "bumped" from a flight) ; <u>TWU Local 555 v. Sw. Airlines Co.</u>, No. CIV.A. 3:02-CV-0554P, 2002 WL 31245372 (N.D. Tex. Oct. 1, 2002)(finding that § 46108 is not relevant in case where employees sued airline based on discipline suffered because of past criminal records).

The present case is far remote from the disputes over certification contemplated by § 46108.  To repeat, § 46108 may be employed to enforce the requirement that "an air carrier" "hold[] a certificate" issued under the Act if it is to "provide air transportation."  It is true that the terms "air carrier" and "air transportation" apply more broadly than one might guess.  See, e.g., United States v. City of Montgomery, 201 F.Supp. 590, 593 (M.D.Al 1962)(finding the term "air carrier" to include municipality that runs an airport and companies operating restaurants at an airport); City of Philadelphia v. C. A. B., 289 F.2d 770, 774 (D.C. Cir. 1961)(holding that trucking portion of shipping route constitutes "air transportation" when another part of the route is completed by air).  But no litigant in this case has argued that any party should be liable because it failed to hold a government-issued certificate or provided air transportation in excess of that allowed by its certificate.  Simply put, plaintiffs' claims allege a variety of state-law tort violations related to the destruction of their home and their insurer's non-payment of claims, not a lack of federal certification.  See Pl. Compl. ¶¶ 58-90; Pl. Declaratory Judgment Action at 14-22.  Similarly, all of the Authority's now-dismissed cross-claims and third-party claims alleged violations of state

tort law, not a lack of federal certification.[20]  Because claims
regarding a lack of certification, or actions in excess of a
certificate, are the only claims that may ground an action under §
46108, the claims in this case do not fall under that provision.

        Nationwide attempts to distinguish this case from the
earlier Triad Engineering matter, in which § 46108 did not apply,
by stating that "[t]he Airport[, that is, the Authority,] is a
Defendant in this matter, not a plaintiff as it was in the Airport
Action," and, therefore, "the Airport's certification status does
'bring the case within the ambit of § 46108.'"  Nationwide's Resp.
to Pl. Supp. Mot. to Remand at 3 (quoting Triad Engineering, No.
2:15-CV-11818, 2016 WL 685086, at *10).  It is true that, in Triad
Engineering, the court noted that § 46108 only applies when a case
is brought to enforce the certification requirement against a
defendant.  Consequently, in that case, the defendants could not
remove on the theory that the dispute concerned the Authority's
certification status, because the Authority was the plaintiff, not

---

[20] See Authority's Am. Cross-Claims ¶¶ 22-45 (alleging negligence,
breach of implied warranty, breach of contract, breach of quasi-
contract, and requesting punitive damages as well as contribution
and indemnity); Authority's Third-Party Compl. ¶¶ 31-75 (alleging
negligence, breach of implied warranty, breach of contract, breach
of quasi-contract, strict product liability, breach of express
warranty, breach of implied warranty of fitness, breach of implied
warranty of merchantability, and negligence, and requesting
declaratory judgment, punitive damages, and contribution and
indemnity).

the defendant.

Even though the Authority is a defendant here, however, Nationwide is mistaken to suggest that the case falls under the statutory provision for enforcing certification requirements.  As stated above, the allegation that the Authority did not hold a certificate, or that it exceeded the scope of its certificate, is not among the Carters' claims or the Authority's third-party claims.  Consequently, 49 U.S.C. §§ 46108 and 41101(a)(1) do not cover this case.  The court made the same observation in <u>Triad Engineering</u>. No. 2:15-CV-11818, 2016 WL 685086, at *10 ("[T]he Authority has not pressed any claim against the defendants alleging that they failed to gain certification or exceeded the scope of their certificates.").

Defendants additionally contend that the claims against the Authority in this case relate to violations of 49 U.S.C. § 41110(e), which defendants believe are also actionable under § 46108.  Section 41110(e) states as follows:

(e) Continuing requirements.—

(1) To hold a certificate issued under section 41102 of this title, an air carrier must continue to be fit, willing, and able to provide the transportation authorized by the certificate and to comply with this part and regulations of the Secretary.

52

> > (2) After notice and an opportunity for a hearing, the Secretary shall amend, modify, suspend, or revoke any part of a certificate issued under section 41102 of this title if the Secretary finds that the air carrier—

> > > (A) is not fit, willing, and able to provide the transportation authorized by the certificate and to comply with this part and regulations of the Secretary; or

> > > (B) does not file reports necessary for the Secretary to decide if the carrier is complying with the requirements of clause (A) of this paragraph.

49 U.S.C. § 41110(e).  In defendants' view, § 41110(e)(1) should transform the Carters' complaint into a claim under the Federal Aviation Act because the statute requires an air carrier "to be fit, willing, and able to provide the transportation authorized by the certificate," and the claims in this lawsuit "directly relate to the Airport's duty, under the FAA, to do so."  Nationwide's Resp. in Opp. to Pl. Supp. Mot. to Remand at 3-4.  Defendants suggest that the Authority's knowledge of the dangers surrounding the landslide, and the worsening condition of the manmade slope, "certainly raise issues regarding the Airport's certification and, thus, present a federal question under the FAA and related regulations in the field of airline and aviation safety."  Id. at 4.  Consequently, in defendants' view, the claims in this case allege violations of § 41110(e), and are actionable under § 46108.

Defendants read 49 U.S.C. § 46108 far too broadly, and

they ignore the remedial provisions in 49 U.S.C. § 41110(e)(2) that limit relief to the Secretary of Transportation.  First, § 46108 allows suit only "to enforce section 41101(a)(1)," the provision requiring carriers to hold a certificate.  As explained above, § 46108 has been interpreted to apply only where a carrier is not certified or has engaged in air carriage that exceeds the scope of its certificate (such that, for purposes of that air carriage, it is not certified).  Section 46108 neither mentions § 41110(e) nor suggests that a violation of § 41110(e) should allow private suits.

Although violation of § 41110(e) may eventually result in the revocation of an air carrier's certificate, such that suit would be allowed under § 46108, the revocation is not automatic upon a mere violation of § 41110(e).  Instead, § 41110(e) allows the Secretary to "amend, modify, suspend, or revoke" a certificate after taking certain steps.  49 U.S.C. § 41110(e)(2).  If the Secretary were to revoke a carrier's certificate based on a violation of § 41110(e), and the carrier continued to provide air transportation after the revocation, a private party could then sue under § 46108 to stop the transportation from continuing.

Defendants' proposed reading of § 46108 would also transform the scheme of remedies in aviation law.  Defendants would make 49 U.S.C. § 46108 a font of liability for any conduct

"relating" to an air carrier's certification, or for non-compliance with federal statutes or regulations in violation of § 41110(e)(1).  This position has no basis in the text of § 46108, which allows suit only to enforce the provision stating that "an air carrier may provide air transportation only if the air carrier holds a certificate," not for any matter simply <u>relating</u> to a certificate.  Moreover, the result of defendants' impermissibly broad reading of § 46108 would be a private right of action for any violation of federal aviation laws and regulations.  Such an interpretation would upend the scheme of public enforcement associated with federal aviation law.  <u>See</u>, <u>e.g.</u>, <u>Bonano</u>, 365 F.3d at 85.  "Congress . . . does not alter the fundamental details of a regulatory scheme in . . . ancillary provisions — it does not, one might say, hide elephants in mouseholes."  <u>Whitman v. Am. Trucking Associations</u>, 531 U.S. 457, 468 (2001).

The singular focus on government enforcement in 49 U.S.C. § 41110(e) confirms that Congress did not intend to provide a private remedy for that provision through § 46108.  Section 41110(e) says nothing about private suits or individual persons' rights, and places enforcement within the government's hands.  <u>Cf. Alexander v. Sandoval</u>, 532 U.S. 275, 288 (2001)("Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on

a particular class of persons.'"").  And, as explained above, complete preemption may be used as a basis for removal only when the party who has brought the lawsuit is entitled to sue under the exclusive federal cause of action.  <u>Franchise Tax Bd.</u>, 463 U.S. 1, 24, 27.

Even if the court gave § 46108 the broad reading defendants suggest, this lawsuit does not seek recovery on the basis that the Authority failed "to be fit, willing, and able to provide the transportation authorized by [its] certificate" or "to comply with [the statute] and regulations of the Secretary."  The Carters brought this case because their home was destroyed, not because they were unable to purchase plane tickets or because the Authority violated federal regulations.  Similarly, the Authority brought claims against co-defendants and third parties to allege violations of state tort law, not of federal regulations.  Defendants do not explain why the claims in this suit are best understood as ones alleging violations of federal regulations that are actionable under § 46108 and § 41110(e)(1).  Moreover, defendants do not identify a violation of any particular federal regulation that they believe to be the "real" cause of action displacing the state-law claims made in this case.

Because 49 U.S.C. §§ 46108, 41110(e)(1), and 41101 do not provide private rights of action that displace the state

remedies in this lawsuit, defendants' complete preemption theory
fails.

### c. The Act's Provisions Concerning Preemptive Scope

Two provisions in Part A, § 40120(c) and § 41713, refer
directly to the preemptive scope of federal aviation law.  To the
extent they apply to this case, they bolster the court's
conclusion that the complete preemption theory fails.

First, the Federal Aviation Act includes a savings
clause preserving legal claims found outside its own provisions,
thus suggesting that Congress did not intend for it to create
exclusive causes of action.  The Act's provision regarding its
"[r]elationship to other laws," 49 U.S.C. § 40120(c), states that
"A remedy under this part is in addition to any other remedies
provided by law."  The term "part" in § 40120(c) refers to all of
Part A, which encompasses the federal rules on "Air Commerce and
Safety."  Part A includes § 46108, the provision relied on by
defendants.  In other words, Congress explicitly legislated that
the two provisions mentioned in this case provide remedies "in
addition to any other remedies provided by law."

Federal courts have repeatedly used § 40120(c) in
determining the preemptive scope of the Act.  In many cases, the
savings clause has played a key role in the determination that

part or all of a state law is not preempted by the Act.  See,
e.g., Abdullah v. American Airlines, Inc., 181 F.3d 363, 365 (3d.
Cir. 1999)(noting that, although "federal law preempt[s] the
standards [of care] for air safety," state causes of action were
not eliminated by the statute, and preemption would thus not allow
for full dismissal of state-law claims)(emphasis added);  Martin
ex rel. Heckman v. Midwest Exp. Holdings, 555 F.3d 806, 808 (9th
Cir. 2009)(Kozinski, C.J.)(employing savings clause in explanation
that "[t]he [Federal Aviation Act] betrays no . . . intention" to
"exclude all state law personal injury suits from the area of air
travel," and thus that it does not preempt the field of personal
injury lawsuits).

        Here, the court's rejection of complete preemption based
on 49 U.S.C. § 46108 is similarly bolstered by the savings clause
of the Federal Aviation Act.  If § 46108 completely preempted
state-law claims, converting them into federal claims, then the
Act's remedies would not be "in addition to" state remedies but
would instead replace them.  The parties give no reason for
ignoring the plain meaning of the savings clause.

        Part A contains another section addressing preemption,
but it is not relevant to this case.  With some exceptions, 49
U.S.C. § 41713 disallows states and other authorities from
"enact[ing] or enforc[ing] a law, regulation, or other provision

having the force and effect of law related to a price, route, or service of an air carrier."  Although § 41713 provides broad defensive preemption for state-law claims, see Smith v. Comair, Inc., 134 F.3d 254 (4th Cir. 1998), "[c]ourts have routinely [held] that preemption under § 41713 does not result in complete preemption," Puterbaugh v. Airtran Airways, 494 F. Supp. 2d 597, 602 (S.D. Ohio 2003).  See also Crown v. PHI Air Med., L.L.C., 2015 U.S. Dist. LEXIS 68113, *5 (E.D. Mich. May 27, 2015)(noting that the "Sixth . . . , the Fifth . . . and the Ninth Circuit[] [courts of appeals] have held that the ADA does not provide for complete preemption of state law claims")(citing Wayne v. DHL Worldwide Express, 294 F.3d 1179 (9th Cir. 2002); Sam L. Majors Jewelers v. ABX, Inc., 117 F.3d 922 (5th Cir. 1997)).

### d. Additional Arguments in Defendants' Briefing

Defendants' briefs opposing remand, and the removal notice itself, make several other arguments that merit some discussion.

First, Zodiac's Notice of Removal points to two district court opinions finding complete preemption of claims related to aviation safety.  See Not. of Removal ¶ 23.  Before considering these opinions, the court notes that the greater weight of authority has concluded that the Federal Aviation Act does not

completely preempt various provisions of state law.  See 15-103
Moore's Federal Practice - Civil § 103.45[2] n49.10 ("Several
circuit and district courts have held that the Federal Aviation
Act does not completely preempt state law causes of
action.")(citing Vorhees v. Naper Aero Club, Inc., 272 F.3d 398,
403 (7th Cir. 2001); In re Air Crash at Lexington, 486 F. Supp. 2d
640, 650-654 (E.D. Ky. 2007); Skydive Factory, Inc. v. Maine
Aviation Corp., 268 F. Supp. 2d 61, 64 (D. Maine 2003);  Glorvigen
v. Cirrus Design Corp., 2006 U.S. Dist. LEXIS 8741, at *19 (D.
Minn. Feb. 16, 2006)).


     Zodiac first mentions the district court decision in
Town of Stratford v. City of Bridgeport, a case in which defendant
Bridgeport, a city that owned an airport situated in the town of
Stratford, bought additional land in Stratford to build a Runway
Safety Area that was mandated by the federal government.  2010
U.S. Dist. Lexis 65975 at *2.  Stratford sued, claiming that
Connecticut law as well as a contract between the two
municipalities required Bridgeport to gain Stratford's approval
for the project, and that Bridgeport had not done so.  Id. at *4-
5.


     The Bridgeport court indeed found that the Connecticut
law, if understood correctly by the plaintiff in that case, was
"pre-empted by the [Federal Aviation Act], thus conveying federal

jurisdiction over this dispute." __Id.__ at *22.  In doing so, the court did not describe any specific federal claim that would replace plaintiff's state-law claim, and the case is thus at odds with the leading explanations of complete preemption given in cases such as __Beneficial Nat'l Bank__ and __Taylor__.

Even on its own terms, __Bridgeport__ is distinguishable from the case at hand.  The __Bridgeport__ court clarified that "[c]ourts have long distinguished between state laws that directly affect aeronautical safety, on the one hand, and facially neutral laws of general application that have merely an incidental impact on aviation safety."  __Id.__ at *20 (quoting __Godspeed Airport, LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n__, 681 F.Supp.2d 182, 201-02 (D.Conn. 2010)).  The law at issue in __Bridgeport__ applied directly — and only — to airports.  2010 U.S. Dist. Lexis 65975 at *4-5.  It thus differs from the state claims in this case, which are based on "facially neutral" state tort laws "of general application."  Even under the rule used by the __Bridgeport__ court, the claims in this case are thus not completely preempted by federal law.

Zodiac also cites the opinion in __Curtin v. Port Authority of New York__, which denied a plaintiff's motion to remand to state court personal-injury tort claims suffered during an airplane evacuation.  183 F.Supp.2d 664 (S.D.N.Y. 2002).  As in

61

Bridgeport, the Curtin court allowed the exercise of federal jurisdiction without saying that a federal cause of action replaced plaintiff's state cause of action.  Id. at 672 (stating that motion to remand is denied); 671 (stating that "the standard of care is a matter of federal, not state, law").

The Curtin case is dissimilar from the present dispute in two ways.  First, it was decided before the Supreme Court's 2003 ruling in Beneficial Nat'l Bank, which did a good deal to clarify that complete preemption requires an exclusive federal cause of action.  Second, the Curtin court noted that the plaintiff's "complaint does not cite any specific statute as a basis for [its] claims." Id. at 666.  The court thus faced a situation where the legal basis for the plaintiff's complaint was unclear, and it may not have clearly relied on state law alone. Because plaintiff's complaint in the present case unambiguously relies on state-law claims, federal jurisdiction is not appropriate.

Second, Cast & Baker cites several authorities asserting that federal aviation laws preempt state laws.  Cast & Baker Resp. in Opp. to Pl. Mot. to Remand at 6-9.  But these authorities do not state that federal aviation law completely preempts state claims, thereby allowing for removal of state causes of action to federal court.  Instead, to the extent they are helpful, they

62

describe the scope of defensive preemption that federal aviation laws may provide. See, e.g., Abdullah v. Am. Airlines, Inc., 181 F.3d 363 (3d Cir. 1999)(holding that state-law standards of care, but not state remedies themselves, are preempted by federal aviation laws); Montalvo v. Spirit Airlines, 508 F.3d 464, 468 (9th Cir. 2007)("This case presents the question of whether and to what extent the Federal Aviation Act . . . and its corresponding regulations promulgated by the Federal Aviation Administration regarding aviation safety, preempt state law standards of care . . . .")(emphasis added). As explained above, defensive preemption, whether of the field or conflict variety, is not the equivalent of complete preemption.

Third, the briefing opposing remand stresses that aviation safety is heavily regulated by the federal government, and that "state regulation by state courts encroaches on areas Congress has committed exclusively to the federal government." Cast & Baker's Resp. in Opp. to Pl. Mot. to Remand at 6-9. In support of this view, defendants cite federal statutes, see 49 U.S.C. § 40104 (stating that "The Administrator of the Federal Aviation Administration shall encourage the development of civil aeronautics and safety of air commerce in and outside the United States"), as well as court cases describing the federal government's primacy in the field of aviation, and Advisory

Circulars that are claimed to be mandatory.  In the Notice of
Removal, Zodiac also mentions the Advisory Circulars that are
claimed to have been mandatory for the particular construction
projects in this case,[21] and Cast & Baker claims, repeatedly, that
the government supervised the project closely and thoroughly.  <u>See</u>
Not of Removal ¶ 14; Cast & Baker's Resp. in Opp. to Pl. Mot. to
Remand at 6-9.  Cast & Baker also highlights the funding that the
federal government gave to the construction projects, which may
have made otherwise advisory directives binding.  Cast & Baker's
Resp. in Opp. to Pl. Mot. to Remand at 8-9 (citing <u>Sierra Pac.</u>
<u>Holdings, Inc. v. Cty. of Ventura</u>, 204 Cal. App. 4th 509, 513
(2012)).

     These arguments, however, fail to show that the doctrine
of complete preemption applies to this dispute.  Congress may well
have desired that federal rather than state government be the
source of certain aviation rules.  If so, the doctrines of field
or conflict preemption would allow defendants operating in those

---

[21] The court discussed the Advisory Circulars mentioned in the
removal notice in note 12 and accompanying text.  Cast & Baker's
briefing mentions, as part of its argument for complete
preemption, one additional Advisory Circular, 150/5220-22.  This
document appears to be an earlier version of 150/5220-22A, which
is discussed in note 12.  Cast & Baker does not, however, provide
a copy of Advisory Circular 150/5220-22 or any detail regarding
the contents of that document.  In particular, there is no
suggestion that 150/5220-22 provides a freestanding federal cause
of action, as would be necessary for it to support removal under
the doctrine of complete preemption.

federally-regulated areas to raise federal law as a defense in state court.  But defendants' extensive arguments about the federal role in regulating aviation do not demonstrate that Congress intended complete preemption, rather than simply defensive preemption, of conflicting state-law claims.  The litigants' discussion of federal supremacy in aviation law fails to demonstrate the "sine qua non" of complete preemption, <u>see Johnson</u>, 781 F.3d at 702, which is, once again, an exclusive federal cause of action covering the type of case at hand.

### C. <u>Nationwide's Arguments Regarding an Earlier-Filed Action</u>

In its response to the motions to remand, Nationwide states that "Before the instant suit was filed, Nationwide properly sought to adjudicate the coverage issues in federal court pursuant to the federal Declaratory Judgment Act," and that the federal courts have jurisdiction over that dispute.  Nationwide's Resp. to Mot. to Remand at 4.  Nationwide believes that this court should take jurisdiction of the present case either because it has jurisdiction over plaintiffs' declaratory judgment claims, or because a federal court unquestionably has jurisdiction over Nationwide's declaratory judgment action previously filed in federal court:

As Nationwide argued in the [earlier-filed] declaratory judgment action, the <u>Nautilus</u> factors weigh in favor of

the federal district court retaining jurisdiction over the declaratory judgment issue.  <u>Great Am. Ins. Co. v. Gross</u>, 468 F.3d 199, 211 (4th Cir. 2006) (citing <u>Nautilus Ins. Co. v. Winchester Homes, Inc.</u>, 15 F.3d 371, 375 (4th Cir. 1994)). . . . Diversity of citizenship provides the federal district court with an independent basis for jurisdiction over Nationwide's declaratory judgment action. . . . If this Court remands this case to state court, it will allow identical disputes to proceed in both federal court and state court. The duplicative litigation could threaten the comity and legal harmony between the two forums. <u>See e.g. Nautilus Ins. Co.</u>, 15 F.3d at 380 (federal policy in favor of awarding declaratory relief was not outweighed by considerations of federalism, efficiency and comity).

<u>Id.</u> at 4-5.

Regardless of its merits, Nationwide's legal theory - that this court should take jurisdiction because of the Carters' declaratory judgment claim or Nationwide's earlier-filed declaratory judgment action over which the federal courts have jurisdiction - is completely absent from the Notice of Removal. The Notice contains no reference whatsoever to Nationwide's previously-filed declaratory judgment action.  And the Carters' declaratory judgment claim is mentioned only briefly when the notice lays out the parties to the case.  Not. of Removal ¶ 13.

Under 28 U.S.C. § 1446, a removal notice must "contain[] a short and plain statement of the grounds for removal."  "[T]he person seeking the benefit of (the removal provisions) should be candid, specific and positive in explaining his relation to the

transaction which gave rise to the suit." <u>Willingham v. Morgan</u>, 395 U.S. 402, 408 (1969)(internal quotation marks omitted). Although there may sometimes be a question as to exactly how specific a removal notice must be, the requirements are plainly not satisfied here, as the notice made no mention of Nationwide's suggested basis for removal.

The strict requirements for amending a notice of removal highlight the necessity of including in the notice any basis for federal jurisdiction that will be employed to oppose remand.  Our court of appeals has discussed several times the procedures for amending removal notices, most recently in <u>Wood v. Crane Co.</u>, 764 F.3d 316, 318 (4th Cir. 2014); <u>see</u> <u>also</u> <u>Cent. W. Virginia Reg'l Airport Auth., Inc. v. Triad Eng'g, Inc.</u>, No. 2:15-CV-11818, 2016 WL 661587, at *2 (S.D.W. Va. Feb. 18, 2016)(discussing standard of amendment under <u>Wood</u> and earlier cases).  Amendment is not allowed in all cases, and is generally permitted only to "correct allegations already present in the notice of removal." <u>Wood</u>, 764 F.3d at 323.  Parties are understood to be limited to the bases of jurisdiction described in their removal notices because, otherwise, amendment would be unnecessary and there would be no need for rules regarding the amendment of removal notices.

Moreover, two large stumbling blocks stand in the way of Nationwide's legal theory.  The Carters' complaint did not mention

the Declaratory Judgment Act, but even if it had, that Act provides a remedy only for "a case of actual controversy [already] within [the court's] jurisdiction." 28 U.S.C. § 2201. "It is axiomatic that the Act does not supply its own jurisdictional base, and where jurisdiction is lacking, declaratory relief should be denied." Delavigne v. Delavigne, 530 F.2d 598, 601 (4th Cir. 1976); see also Commercial Metals Co. v. Balfour, Guthrie, & Co., 577 F.2d 264, 268 (5th Cir. 1978)("[a]n independent ground of jurisdiction is expressly required by statute in petitions seeking declaratory judgments"). In order for the Declaratory Judgment Act to provide jurisdiction, Nationwide would have to point to another source of jurisdiction in this case. Although it asserts that there is diversity jurisdiction in its earlier-filed declaratory judgment action, it has not argued that diversity exists in the present case, nor was the diversity theory present in the removal notice. The mere fact that the Carters included a claim for declaratory relief will not allow Nationwide to remove this case to a federal forum.

Second, Nationwide cites no authority supporting its apparent desire for the court to take jurisdiction over this case based on the presence of federal jurisdiction in its earlier-filed federal suit. The only cases that Nationwide cites in support of its theory, Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d

371, 375 (4th Cir. 1994) and <u>Great Am. Ins. Co. v. Gross</u>, 468 F.3d 199, 211 (4th Cir. 2006), considered the circumstances in which federal courts could exercise discretion to dismiss or otherwise abstain from adjudicating actions over which they had jurisdiction.  Neither case suggests that federal jurisdiction is created in one suit merely because another suit has been filed and is properly within a federal court's jurisdiction.

<u>Conclusion</u>

Because Zodiac, the litigant who claimed to be "acting under" a "federal officer," has departed this case; because the case was improperly removed under the "federal officer" statute in the first instance; because there is no exclusive federal cause of action allowing use of the doctrine of complete preemption; and because all other proffered bases of federal jurisdiction are absent from the removal notice, the court ORDERS that the motions to remand filed by the Carters and the Authority be, and they hereby are, granted for lack of subject-matter jurisdiction.[22] The court will, by companion order entered contemporaneously

---

[22] Because the court has determined that both theories of federal jurisdiction fail, there is no need to address defendants' request to realign the parties, the contention that removal was improper because of a lack of consent, or the argument that third-party defendants may not remove under these circumstances.

herewith, remand this action to the Circuit Court of Kanawha County.

The Clerk is directed to forward a copy of this written opinion and order to counsel of record and any unrepresented parties and a certified copy to the clerk of court for the Circuit Court of Kanawha County.

ENTER: July 25, 2016

John T. Copenhaver, Jr.
United States District Judge